The argument is on Case No. 22-967, Integrated Media Resources v. Morley. Good morning. May it please the court and your honors. I am Elizabeth Dulcid with Brewer, and I am here today on behalf of the appellant, Plaintiff I.M.R. The issue of this appeal is whether the court below should have dismissed with prejudice and without leave to amend the securities fraud claim in I.M.R.'s complaint filed in 2021 on grounds that it was time-barred by the five-year statute of repose. I.M.R.'s position is that the court should not have done so because the complaint, on its face and expressly, alleged one, misrepresentations, and two, a scheme to defraud under Rule 10b-5, the scheme of which included fraudulent acts and practices that ran from 2016 to 2019, which are within the five-year statute of repose. Now, if I may, I would like to tell the court and advise the court that as recently as 2021, courts have stated that the issue regarding when the repose clock begins to tick in a Section 10b-5 case is not cut and dried and is an open issue. Can I ask, your client's purchase was in 2014? The purchase was in 2014, your honor. Is that the only sort of loss we're talking about here? Well, the purchase was in 2014, your honor. That being said, from 2016 to 2019, as alleged in the complaint, there was a scheme to defraud, which included a variety of acts in order to prevent my client from transferring the assets. My client had the right to transfer the assets pursuant to the subscription agreement, which is attached to Exhibit 14 of the complaint. And under that subscription agreement, it states that the transfer of assets is allowed, well, I'll read verbatim if I may. No member shall transfer any units except in compliance with Section 8.1b and the prior written consent of a majority of the members of the Management Committee, which majority includes defendant J. Todd Morley. And that is found at page A-326, Section A of the Record on Appeal. Counsel, the violation is a misrepresentation in connection with the purchase or sale of a security. I understand how misrepresentations made up until your client's July 6, 2014, are actionable. But I'm not sure how misrepresentations made after the purchase are misrepresentations in connection with a purchase that's already occurred. I understand, Your Honor. And what I think is an error in the decision below is that the court only focused on the misrepresentations in 2014. What the court below in its decision ignored are the substantive allegations of the complaint regarding a scheme to defraud. In fact, but it has to be a misrepresentation in connection with the purchase of a security. Or the sale of a security. Or the sale of a security. Yes. There's no sale here. There was no sale here because under the terms of the subscription agreement and the scheme to defraud, which Morley, who was the key fraudster in this case, along with the other defendants, did, is every time our client went and asked about the status of his investment, a lot of fraudulent statements were made and acts done to prevent him from attempting to transfer the units. Excuse me. For instance, there was sham loans. There was no sale. Pardon me? Counselor, there was no sale. What you're saying is that your client might have sold and even told the truth. So it's the absence of a sale that you're talking about. Well, there was no sale. And where do you get that being part of fraud? Well, while there was no sale, the reason there was no sale, i.e. a transfer, was because you need to get the consent and the majority vote of individuals, namely Morley. And in order to prevent that sale, because this is a private product, this is a product that is not on the open or public market, this is something that needs the consent of the defendant here in order to execute that sale. And what Morley did, as well as the other defendants, is they made representations from 2016 to 2019 regarding sham loans, regarding efforts to pay taxes that were not done. I understand that. But it's a fraud in connection with the purchase of a sale of securities. And I think what you're saying is that statute should be brought into sight for the non-salers. And I don't see that in the text. I don't see it as part of the fraud. That's an issue. Or in any authority. I mean, do you have any case in which an action has been allowed for a failure to sell based on a fraud? Well, I would bring up two points. I don't have a case. That being said, courts, as recently as 2021, have noted that this is an open issue. And, in fact, a judge of this circuit, Judge Guido Calabresi, noted in the Stoltz v. Dam decision, which is at 355 F3D 92 on page 107, Judge Calabresi wrote, giving repose to a defendant who has ceased to do wrong may well be worthwhile, even if it is unfair to a plaintiff whose cause of action has not yet accrued. But, and this is a big but, it is a different thing altogether to give repose to a defendant who continued his wrongful wrongdoing, excuse me, wrongful conduct, perhaps even beyond the time specified by the repose period. The SEC has even noted in secondary sources that they think that it was inadvertent that there were certain statements, such as the one that Your Honor Walker has noted, to not include things such as the non-sale of securities. And I think this is a very important and distinct case because here we have a private product. Again, a product that, unlike a stock, cannot be sold on the public market. This is something where my client, the plaintiff, had to get the consent of Morley. Morley, who is continuing to engage in wrongful conduct. Morley, who not just in 2014, but also in 2016, 2017, 2018, 2019, 2020, did things to siphon funds from investors, including plaintiff, and took that money and rendered G2, the security here, valueless. If we look at the history of the cases that speak to Rule 10b-5 and the statute of repose, the vast majority of those cases are with respect to a stock, to public products. Here this is a private product. That is a very significant difference in detail that I think should be considered here. If I may, I also think it is quite significant that in this decision, not only was it a glaring omission by the court below to not speak to the scheme to defraud, which is described expressly and repeatedly in sections, excuse me, pages 813 to 853, paragraphs 4, 7, 8, 65, 66, 70, 71, 108, 102, 121, 158, 173, 189, 192, and paragraphs 118 to 124, as well as paragraphs 173. That the court did not speak to the scheme to defraud and simply outright dismissed the complaint that had never been amended with prejudice and without leave to amend is not the exercise of justice that was required here. As the court is well aware, and counselors were aware, under Rule FRCP-15A2, it states the court should freely give leave when justice so requires. And in this case, unlike the cases cited, there was never an opportunity to amend the complaint. If the court had found that the complaint should have been pled more artfully, it should have allowed at least one instance for leave to amend. That was not done here. Is there a pleading that would eliminate this problem, or basically what you're asking for is that the pleading should be deemed sufficient based on the 2014 to 2019 misstatements? I would say two things. I think that the way the complaint is written does provide for a timely stated claim. That being said, if given the opportunity to amend this complaint, these allegations could have been more artfully and more clearly stated so that the court perhaps would not have omitted a discussion of the scheme to defraud. But I will submit that, as noted in the paragraphs I cited, it is very clear that my client, the plaintiff, did not simply allege misrepresentation in 2014, but alleged a very clear scheme to defraud from 2016 to 2019. Thank you, Counselor. Thank you. Mr. Rowe. Good morning, Your Honors. May it please the court. My name is George Rowe, along with my colleague Howard Shiffman. We represent Defendant Appellee Jonathan Todd Morley. We would ask this court to affirm the dismissal of the time-barred Section 10b and Rule 10b-5 claim, which was based entirely on a single purchase of securities in July of 2014, which was nearly seven years before Appellant filed suit and therefore outside the five-year statute of repose. As Judge Cote correctly held below, a Rule 10b-5 violation must be in connection with the purchase or sale of securities. And here, the only purchase or sale of securities alleged and therefore the only possible violation occurred in July of 2014. Your adjudicator seems to be arguing that her client was unable to sell subsequent to 2014 because of the ongoing scheme. Well, to that I would say, and there's a discussion of this in the Teva case that we cite in our brief, that scheme liability needs to be applied specifically. And I note that this argument was not raised in Appellant's briefs in this appeal as to the scheme liability versus misrepresentation argument here. Even so, since in this case there was only a single purchase or sale of securities, as this court held in Arnold, the statute of repose starts to run when the parties have committed themselves to the purchase or sale transaction. And as I said, here there was only a single purchase or sale transaction. And to a question that you asked, Judge Raggi, we will submit that there is no possible amendment here because there was, again, a single purchase or sale of securities. Just to be clear on that, I think your adversary was suggesting with amendment she might satisfy scheme liability. I want to be sure I understand your position on what would be sufficient to satisfy scheme liability. The case you're pointing us to on that is what again? That's the Teva case, the District of Connecticut. It's 512 F. Sup. 3, 321 cited in our brief. What the complaint alleges, Your Honors, is effectively there's a single purchase and then there's a series of misrepresentations that are very generally just about the entity in which Appellant invested. You know, those statements are not connected in any way to the initial investment by Appellant. No, but they are in effect could be argued to be statements roughly the equivalent of wallet. This statement is in order to keep the plaintiff uninformed about the problems, the unlawfulness of the transaction. I would say that there's another case that we cited in our brief, Leona Carrier. In that case, similarly discussed misrepresentations that were made after the purchase of sales securities, generally about the financial conditions and prospects of the companies after the plaintiff's purchase of securities in that case. That case, Leona Carrier, followed this Court's decision in Arnold as well, as well as distinguishing the cases that Appellant relies on. Those earlier cases, Plymouth County, Beacon, and Dynex. The Beacon was the only case of those that actually was following Arnold, but it cited cases exclusively that predated Arnold in its analysis and did not cite or consider Arnold. Now, I also want to discuss going back to the requirements for avoiding dismissal under Rule 10b-5. Appellant acknowledges that it must be, among other things, they must allege that the misrepresentation is in connection with the purchase or sale of securities. And that's important because the language, if you look at the statute of repose in 28 U.S.C. 1658b, expressly requires not just misrepresentations, but a violation. And the violation requires satisfying all of those elements. And as this Court has held, the third and fourth elements of a Section 10b claim have been deemed transaction causation, which Appellant also cannot satisfy based on the timing of its argument. In other words, Appellant cannot have relied on misrepresentations that were made after it had invested and engaged in the only purchase and sale of securities that's alleged here. Let me ask you about the following scenario. Your adversary says this was a situation where her client could not sell his security without the defendant's consent. Do you agree with that? That argument has not been raised before. I would have to look at that in the subscription agreement. If that were the case, and the plaintiff came to the defendant and said, I want to sell my shares, and the defendant made a misrepresentation to the plaintiff in those circumstances, and the plaintiff relied on it and didn't sell the shares, what's your position on whether there could be any action there? Well, I don't think simply saying whether or not the plaintiff could or could not sell would necessarily be a misrepresentation in that instance. And we also cited the Supreme Court's decision in Blue Chip Stamps regarding the holding that it would be insufficient for a plaintiff to prove that it failed to purchase or sell stock. No, I understand that generally, but I'm wondering whether you want us to consider these particular circumstances where the fraudulent misrepresentation is made by a party whose consent the plaintiff was basically seeking because she needed to. She couldn't go on the market, or her client, I should say. So they came, said, I want to sell, implicitly saying, you know, consent to my selling, and instead of consenting, your client makes a misrepresentation. Are we in the securities law or not? I mean, first of all, it's a good question, but I don't think that's alleged anywhere here. There's no allegation that the appellant, you know, came to my client and requested permission under the subscription documents to make some sort of transfer, as my friend here said, first of all. And as I said, even if my client had turned the appellant down, it would not have been a misrepresentation alone. And so we don't believe that it would have satisfied or constituted a violation of Section 10B or Rule 10b-5. We also submit that this court should follow the reasoning in Arnold and that appellant has not provided any convincing basis for the court to depart from its reasoning in that case. The court in Arnold addressed an identical argument to the one that appellant advances here and found that that argument, that misrepresentations even after the final purchase or sale of securities alleged, could start the running of the statute of repose, ignored the applicable limitations period, and was thus devoid of merit. And I also wanted to note that, you know, as appellant relies on certain earlier district court decisions and that following those district court decisions, none of which, again, are after 2012, there have been a series of decisions within the circuit, both by the Southern District of New York, as well as the Teva case in the District of Connecticut that we cited, which all follow Arnold consistently. And in fact, even to the extent that there's any cases that have adopted this last misrepresentation formulation, they've only done so in cases presenting a situation where the alleged misrepresentation, which was considered the last one, was actually before the purchase or sale of securities at issue in that case. And furthermore, appellants cite Henry Beacon, which self-cited Plymouth and Dynex. Plymouth as well also relied on Dynex. And in Dynex, the court there actually specifically distinguished its opinion, the judge there distinguished his decision in Dynex from one of his prior cases in Shalom v. KPMG, where he had found that the plaintiff's Section 10b claims in that case were barred by the statute of repose because there were no securities transactions alleged within five years before the plaintiff filing suit. So even under that line of cases, Beacon, Plymouth, and Dynex, they all rest on this Dynex, which is fundamentally premised on the idea that there was a purchase or sale of securities within five years of filing suit, which is obviously not present in this case, nor could that be alleged here. I'd also like to, I see my time is running out. I would also like to address just briefly, appellant made a number of arguments regarding policy reasons, citing Supreme Court and congressional intent. And I think it's quite clear, as set forth in our papers, that the Supreme Court has stated that the statute of repose at issue here was a clear expression of congressional intent that was intended to be an unqualified bar on actions instituted five years after such a violation and to give defendants total repose after five years. So I think it's quite clear that the statute of repose is intended to be an unqualified bar and that attempts to extend the statute of repose without any purchase or sale of securities should be rejected. Thank you. Thank you, counsel. Ms. Dell said you reserved two minutes for questions. Thank you, Your Honors. I would like to address some of the argument raised by opposing counsel. First, opposing counsel states that if we wanted to take the position that there was a scheme to defraud here, perhaps we should have led that with more specificity. And if that were the case, then yes, indeed. That's why we're saying that the court below should not have outright dismissed with prejudice and without leave to amend. Did you argue that to the district court as a reason not to dismiss that you wanted to plead a scheme to defraud separate and apart from the sale? Your Honor, the scheme to defraud is alleged in the complaint in multiple sections. Did you argue to the district court that that would be a ground for them? I believe we did, Your Honor. I will say I did not make that argument. That being said, I do not know, but I believe we did. I personally did not make that argument. I would also advise the court that even if it not had been alleged, under FRCP Rule 15, when justice so requires, amendment may be given, a case may also proceed without prejudice. The problem is we don't know what you could plead and whether it would be sufficient. But you knew this back when you were before the district court. Similarly, if your theory is that refusing to let you sell in these circumstances somehow created a cause of action, you knew that in the district court. Nevertheless, were actionable. Well, the court, in its opinion, only discusses the misrepresentations at the time of sale. They do not address the allegations in the complaint where we allege multiple times a scheme to defraud. We state and discuss a scheme at least 16 times. The word scheme appears in the complaint 16 times under Rule 10b-5. I'm looking at your claim and it seems to relate only to the one transaction. There was one transaction, but as to a question raised by Judge Walker, our position is that we could not sell because there was provision regarding the transfer of assets. Clearly, a sale would be encapsulated within such a transfer. Because we alleged a scheme to defraud, which included sham loans from 2016 to 2019. And those are alleged in paragraphs. Scheme to defraud you how? Because in the complaint you say that they inflated sales of stock and that then your client purchased shares at that artificially inflated price. I'm at 853 paragraph 191. I don't see where there's any injury attributed to a scheme to defraud beyond that. Yes, well, there's a section entitled plaintiff's damages and loss causation, which begins... I'm looking at count one. Yes. Or claim one. In claim one. Because after that, we're into state law claims. I understand, Your Honor. I'm really only looking at pages 52 to 54 to understand what your federal claim is. Yes, and under count one, we do allege in our first paragraph that we incorporate our allegations above into that count. That may be so. But, you know, this isn't a matter of the court hunting for what theory you could possibly claim. Are you telling me this was meant to alert people, to put people on notice that something other than that sale was being alleged to be fraudulent? This was to put people on notice that the defendant Morley and the insider defendants were concealing information and siphoning millions of dollars from the defendants. In fact, the insider defendants, in fact, concede that they also invested in these products and lost millions. This was a scheme that not only defrauded my client of $1.5 million, but took money from multiple investors here. All right. Thank you. If I may, I will close in one minute. Thank you. With respect to the Arnold case, in that case, there was a third amended complaint at issue. In here, we were never given an opportunity to amend. And finally, I would urge the court to consider the allegations regarding scheme liability as cited earlier in my opening. And also to consider that this is a private product for which is a very recent read of securities. When this rule 10B5 was articulated, it was mostly in regards to public products such as stocks. And with that, I conclude. I do believe that the decision should be reversed and remanded, and it should not have been dismissed with prejudice. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement. And that concludes our arguments for today. So I'll ask the clerk to take it to the jury. Thank you, counsel. Thank you. Court is adjourned. Thank you.